DECISION
Relator, Cyril J. Pontillo, commenced this original action requesting a writ of mandamus ordering respondent, Public Employees Retirement System Board of the Public Employees Retirement System of Ohio ("board"), to vacate its decision denying his application for disability retirement benefits and to find that relator is entitled to said benefits. In the alternative, relator requests a writ of mandamus ordering the board to vacate its decision denying his application for disability retirement benefits, and to issue a new decision, after accepting and considering additional objective medical evidence filed on relator's behalf.
Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the board did not abuse its discretion in concluding that relator was not entitled to disability retirement benefits.
Relator has filed objections to the magistrate's decision, in large part rearguing those matters addressed in the magistrate's decision. For the reasons set forth below, as well as those contained in the magistrate's decision, the objections are overruled.
Nothing in the record supports relator's contention that Dr. Kennard C. Ford was not a disinterested physician as required by R.C. 145.35(B). Simply because Dr. Ford's opinion did not support relator's application does not establish that he was biased. The magistrate determined that Dr. Ford had a complete report from the examining physician, Dr. Muakkassa. That report included information regarding relator's degenerative lumbar disc disease. Relator described to Dr. Ford the nature of his employment duties. Dr. Ford independently assessed whether relator was disabled with knowledge of the alleged medical conditions and the nature of relator's duties. Dr. Ford simply found that relator was not permanently disabled. Dr. Ford was not required to accept Dr. Muakkassa's assessment of relator's condition.
Nor are we persuaded that Ohio Adm. Code 145-11-02(B)(3)(e), which requires an applicant who wishes to file additional medical evidence to do so within 45 days of appealing the board's original order denying benefits, is arbitrary, capricious or not authorized by statute. The board is authorized to promulgate rules to administer and manage its responsibilities to its members pursuant to R.C. 145.09. Enacting rules for the purpose of establishing procedures for handling applications for disability benefits, including reasonable time limits, does not constitute an unconstitutional assumption of legislative power by an administrative agency.
Nor are the disability forms misleading and deceptive. Doctors are routinely required to present objective findings and to give their opinions based upon those findings. Form DR-3, Report of Attending Physician, does state that the physician must set forth the subjective and objective symptoms of which the employee complains and refer to test results which enable the physician to make a diagnosis. Nothing about this form is misleading or deceptive.
Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law to them. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; Writ of mandamus denied.
TYACK, P.J., and BOWMAN, J., concur.
 APPENDIX A IN MANDAMUS
Relator, Cyril J. Pontillo, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Public Employees Retirement System ("PERS") and the Board of the Public Employees Retirement System ("board") to vacate its decision denying his application for disability retirement benefits and to find that he is entitled to said benefits. In the alternative, relator asks that the board's decision be vacated and that the board be ordered to issue a new decision, after accepting and considering additional objective medical evidence filed on relator's behalf.
Findings of Fact:
1. Relator filed an application for disability retirement with PERS on April 18, 2000.
2. Relator's application was supported by the April 12, 2000 report of his attending physician, Kamel F. Muakkassa, M.D., who completed a form entitled "Report of Attending Physician," supplied by PERS. Dr. Muakkassa listed the following diagnosis: "Degenerative lumbar disease L2-5," "lumbar disc disease L3-5," and "Bilateral facet joint hypertrophy L2-S1." Dr. Muakkassa indicated that relator had low back pain, weakness in his right leg, numbness in his right foot, weakness in his left thigh, and difficulty with his gait. Dr. Muakkassa concluded that relator was permanently physically incapacitated from the performance of duty and that he ought to receive a disability benefit because of such permanent disability as follows:
 pt. experiences good and bad days, his ability to work is very limited due to pain. He is unable to walk for prolonged periods of time, he is unable to sit or stand also for prolonged periods of time. I feel patient is disabled from working.
3. Relator's supervisor, Dr. Sunil Chand, was required to complete a report. In that report, Dr. Chand indicated that he believed relator was permanently incapacitated from the performance of his duties for the following reasons: "Duties require regular meetings with internal and especially external leaders; tours of facilities, on-site inspections; meetings at early and late hours; travel locally and nationally. Such mobility is constant."
4. By letter dated April 25, 2000, PERS referred relator to the Summit Rehabilitation Medicine M.C. for an independent medical examination pursuant to R.C. 145.35.
5. Kennard C. Ford, M.D., examined relator and issued a report dated June 5, 2000. In that report, Dr. Ford noted that relator suffered from spinal stenosis and left knee osteoarthritis. Dr. Ford also noted that paralumbar muscular spasm is absent on specific maneuvers, that relator does have mildly decreased flexion and extension in side-to-side bending and twisting. Dr. Ford noted that relator's manual motor strength testing in the bilateral lower extremities was at least 4+/5. He noted further that relator's decrease in range of motion of his left knee was significant as he can flex his knee only to about ninety degrees and he lacked about ten degrees of extension. Dr. Ford noted that, due to relator's executive position, there is no type of lifting involved and, at the University, relator should have access to ADA accessible buildings. Dr. Ford concluded as follows:
 Mr. Cyril Pontillo was examined on June 5, 2000, by myself and the results of this examination are given in the report above. I hereby certify that because of the above described condition, the patient is not presumed to be physically or mentally incapacitated for the performance of duties as described above and should not be entitled to a disability benefit. I would recommend continued treatment in regards to his physical exercising and follow up with his family physician and neurosurgeon as needed.
6. The board's physician, Maurice C. Mast, M.D., conducted a review of the attending physician's report and the report of the independent medical examiner. In his letter dated August 16, 2000, Dr. Mast concluded as follows:
 After a thorough review of all medical documentation submitted, as well as the claimant's job description, I believe that the claimant's conditions are not permanently incapacitat-ing for the performance of his job duties as a District Vice President of Business, Community and Economic Develop-ment. Accordingly, I recommend that disability retirement be denied.
7. By letter dated August 16, 2000, relator was notified that the board denied his application for disability. The board's letter explained relator's right to appeal including the following: that relator's notice of his intent to appeal and supply additional objective medical evidence must be received by PERS within thirty days from the date of the letter; that relator has the opportunity to submit additional objective medical evidence no later than forty-five days from the date of his written notice of intent to appeal; that relator may make a written request for an extension of time within which to provide additional objective medical evidence provided that the request is made within forty-five days; that relator may be granted only one additional forty-five day extension to submit additional medical evidence; and that if relator fails to file his notice of intent to appeal or fails to submit additional objective medical evidence within the time allowed, the board's action will be final and that any future application for disability benefits would have to be submitted with supporting medical evidence of progression of, or new, disabling conditions.
8. On September 7, 2000, relator indicated his intent to appeal the August 16, 2000 decision and indicated further that "[a] licensed physician will provide additional objective medical evidence within your specified time lines."
9. Relator requested a forty-five day extension pursuant to Ohio Adm. Code 145-11-02(B)(3)(e). As such, relator's last date of submitted additional objective medical evidence was December 6, 2000.
10. Dr. Muakkassa issued a report dated May 16, 2001, which relator submitted to the board in support of his appeal. Dr. Muakkassa indicated that relator was still having multiple complaints of pain and numbness, that he continued to show no improvement, that he was having problems with his left leg in addition to the problems he was having with his right leg and knee, that he continued to have back pain with discomfort and spasms in the right leg, that he did not recommend surgery, and that relator had reached maximum medical recovery. Dr. Muakkassa indicated that relator was unable to perform standing or sitting work for extended periods of time, that he cannot tolerate twelve hour workdays, and that he is unable to carry out most household maintenance activity requiring the use of his legs or lower back. Because of his limited ability to walk very short distances, Dr. Muakkassa concluded that relator is physically and totally disabled from performing his present job.
11. By letter dated June 1, 2001, relator was notified that any subsequent applications for disability benefits filed after the denial of an appeal should be submitted with medical evidence supporting progression of the disabling condition or evidence of new disabling conditions. Further, relator was informed that if two years have elapsed since the date his contributing service was terminated, no subsequent applications will be accepted. Lastly, the letter informed relator that he had been out of public employment for three years and at the time had elapsed to appeal the denial of his disability benefits.
12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
The determination of whether a member of the PERS is entitled to disability retirement is solely within the province of the board pursuant to R.C. 145.35. See Fair v. School Employees Retirement System (1978),53 Ohio St.2d 118, where the Ohio Supreme Court construed the identical language in R.C. 3309.39 as vesting the School Employees Retirement System with the authority to determine whether a member of the School Employees Retirement System is entitled to disability retirement. In order to be entitled to disability retirement benefits, a member must be mentally or physically incapacitated for the performance of duty by a disabling condition either permanent or presumed to be permanent for twelve continuous months following the filing of the application. R.C.145.35(E). The determination by the board of whether a person is entitled to disability retirement benefits is subject to review by mandamus, and mandamus may be utilized to correct any other abuse of discretion in the proceedings. See, e.g., State ex rel. McMaster v. School Emp. Retirement Sys. (1994), 69 Ohio St.3d 130.
In order to be entitled to a writ of mandamus, a relator must establish that: (1) he has a clear legal right to the relief sought; (2) respondent is under a clear legal duty to perform the act; and (3) relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. The term "abuse of discretion" connotes more than just an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Rock v. Cabral (1993), 67 Ohio St.3d 108, 112.
Relator raises four issues for consideration in this mandamus action: (1) Dr. Ford was not a disinterested physician as required by R.C.145.35(B); (2) Dr. Ford's report was not based on substantial, reliable and probative evidence and should have been disregarded; (3) Ohio Adm. Code 145-11-02(B)(3)(e) requiring the applicant file additional medical evidence within forty-five days is arbitrary, capricious, and not authorized by statute and denied relator his right to have Dr. Muakkassa's May 16, 2001 report considered; and (4) if PERS requires a showing of significant objective medical evidence, then its forms are misleading and deceptive and their promulgation, distribution, and use are unlawful and constituted gross abuse of discretion. For the reasons that follow, this magistrate finds that relator has not established that PERS and the board have abused their discretion in denying his application for disability compensation and this court should deny relator's request for writ of mandamus.
R.C. 145.35(E) provides, in pertinent part, as follows:
 Medical examination of a member who has applied for a disability benefit shall be conducted by a competent disinterested physician or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition either permanent or presumed to be permanent. * * *
Relator contends that Dr. Ford was not neutral, objective or disinterested for the following reasons: relator telephoned PERS immediately after his examination to inform them that he believed he had been treated unfairly by Dr. Ford; Dr. Ford did not consider the disabling nature of relator's degenerative lumbar disease; Dr. Ford did not have the reverse side of Dr. Muakkassa's report; and Dr. Ford was obviously not aware of the traveling requirements involved in relator's job.
Relator was examined by Dr. Ford who issued a report based solely on that examination. Although relator contends that Dr. Ford did not have the reverse side of Dr. Muakkassa's report to review, the certified copy presented to the court indicates otherwise. As such, this magistrate concludes that Dr. Ford did have Dr. Muakkassa's complete report.
Relator also contends that Dr. Ford did not consider the disabling nature of his degenerative lumbar disease and its affect on his ability to perform the duties of his present job. As indicated previously, R.C.145.35(E) provides that, when a member applies for a disability benefit, a medical examination shall be conducted by a competent disinterested physician selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition either permanent or presumed to be permanent. Nothing in R.C. 145.35(E) provides that the independent medical examiner is required to accept that the applicant suffers from any disabling conditions. Instead, the independent medical examiner conducts their own review and reaches their own conclusion. Unlike cases proceeding before the Industrial Commission, doctors are not ordered to examine the applicant for any particular medical condition as none have been formerly allowed. In his report, Dr. Ford concluded that relator suffered from spinal stenosis and left knee osteoarthritis. Dr. Ford was not required to examine relator for degenerative lumbar disease.
Relator also contends that Dr. Ford could not give an opinion because he did not have relator's job description. In his report, Dr. Ford asked relator why he could no longer work. Relator explained that he could not handle the driving and navigating steps. Dr. Ford then detailed relator's current activities including his physical therapy and concluded that he was not permanently incapacitated from his job.
Further, the reports of Drs. Muakkassa and Ford were reviewed by physical medicine specialist, Dr. Mast. By letter dated August 16, 2000, Dr. Mast indicated that relator was not permanently incapacitated from performing his duties. Dr. Mast reviewed relator's job description and all the medical documentation submitted and concluded that relator was not permanently incapacitated for the performance of his job duties.
Based on the above, relator has not demonstrated that Dr. Ford was not a disinterested physician as required by R.C. 145.35(E).
Relator also contends that Dr. Ford's report was not based on substantial, reliable and probative evidence and that that report should have been disregarded by the commission. This argument relies on relator's prior argument that Dr. Ford's report was based on assumptions and was conducted without the benefit of Dr. Muakkassa's report. As indicated above, Dr. Ford was to make his own independent evaluation and was not required to assume that relator suffered from any conditions. As such, this argument lacks merit.
Relator next argues that Ohio Adm. Code 145-11-02(B)(3)(e), which requires that the applicant file additional medical evidence within forty-five days of appealing the board's original order denying benefits, is arbitrary, capricious, and not authorized by statute. In conjunction with this argument, relator contends that PERS's refusal to consider Dr. Muakkassa's May 16, 2001 report which was filed outside the forty-five day period and outside the forty-five day extension which relator was granted is arbitrary, capricious, and not authorized by statute. This magistrate disagrees.
PERS is authorized to promulgate rules to administer and manage its responsibilities to its members pursuant to R.C. 145.09. Ohio Adm. Code Chapter 145-11 has been promulgated to provide the procedures to be followed regarding applications for disability benefits. Pursuant to those rules, members are informed of the requirements to be followed in filing an application for a disability benefit, as well as their responsibility to submit to an independent medical examination, and their responsibility to submit to additional treatment if the independent medical examiner indicates that such treatment would be beneficial. Within these rules, members are also informed of their rights to appeal from a decision denying their application and are provided with the time requirements necessary to file that appeal as well as the responsibility to submit additional medical evidence. Furthermore, the members are notified that if they fail to file the notice of appeal and provide additional medical evidence, the order of the board will be deemed final and that any other application must show medical evidence supporting progression of the disabling condition or evidence of a new disabling condition. The fact that such requirements are not spelled out in Ohio Adm. Code Chapter 145 does not render the rules promulgated under that chapter arbitrary, capricious, and not authorized by statute. Instead, rules have been promulgated providing a procedure whereby the board can review applications for disability compensation. Nothing in relator's brief supports a rationale for this court to find that the board was not authorized to establish a procedure for the filing and handling of these applications or that the time limits are unreasonable. Relator had ninety days, with the extension he was granted, in which to file additional medical evidence. Relator failed to do so and the board's decision denying him disability retirement became final. The board was not required to consider Dr. Muakkassa's report which was filed outside the ninety day period and relator cannot show otherwise. As such, this argument fails as well.
Lastly, relator cites from the board's August 16, 2000 letter indicating that, based upon Dr. Ford's report, there was no significant objective medical evidence of a disabling condition. Relator contends that R.C. Chapter 145 does not require "objective" medical evidence. This magistrate disagrees.
Within the context of any disability question, an applicant is required to submit competent, credible medical evidence that they are entitled to the requested benefits. The fact that the board used the phrase "significant objective medical findings" does not render the board's decision defective. In his June 16, 2000 report, Dr. Mast indicated that there is insufficient evidence of permanent disability due to chronic low back pain and that relator's conditions are not permanently incapacitating him in the performance of his job duties. In his report, Dr. Ford indicated that relator is not presumed to be physically or mentally incapacitated for the performance of duties and should not be entitled to a disability benefit. Clearly, the doctors and the board are applying the proper standard and relator's argument to the contrary is not supported by the record.
Lastly, relator contends that the disability forms are misleading and deceptive because they do not inform the doctor that objective medical evidence of a disability must be presented to PERS. Relator contends that "subjective" evidence of a disabling condition is all that is required. This magistrate disagrees.
In the context of disability applications, doctors are routinely required to present objective findings and then give their conclusions based upon those findings. Within a report, doctors often note a patient's subjective complaints; however, the doctor's ultimate conclusion is based on the objective medical findings. The fact that the board requires objective medical evidence of a disabling condition, and this is not specified on the forms, does not render those forms deceptive and misleading and does not entitle relator to relief in mandamus. Furthermore, after having failed to present objective medical evidence initially with his application, relator had the opportunity to do so when he appealed the board's original denial. Relator failed to do so.
Based upon the foregoing, it is this magistrate's decision that relator has not demonstrated that PERS or PERS board has abused its discretion in denying his application for disability retirement benefits and this court should deny relator's request for a writ of mandamus.